UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    07mj399 (JNE/AJB)

        Plaintiff,

v.                                                           ORDER


Blanca Rembao-Renteria,

        Defendant.

_____

LeeAnn Bell, Esq., Assistant United States Attorney, Office of the United States Attorney for the District of Minnesota, appeared for Plaintiff United States of America.

Andrea K. George, Esq., Office of the Minnesota Federal Public Defender, appeared for Defendant Blanca Rembao-Renteria.

_____

        This matter is before the Court on the Government's Emergency Appeal of the

Magistrate's Release Order dated September 20, 2007.  For the reasons stated below, the appeal

of the United States is denied and the defendant, Blanca Rembao-Renteria, is ordered released

subject to the conditions set forth herein.

## I.   BACKGROUND

        On January 3, 2007, the Bureau of Immigration and Customs Enforcement (ICE)

deported Rembao-Renteria from the United States to Mexico.  She subsequently returned to the

United States and was arrested on a Minnesota Department of Corrections warrant for returning

to the United States during her state probation term.  Rembao-Renteria was held in Mower

County Jail from May 11, 2007, until May 23, 2007, when she was turned over to the MCF

Shakopee to serve her sentence.  On September 12, 2007, MCF Shakopee released Rembao-

Renteria to the custody of ICE, who held her at the Ramsey County Jail until September 18,

2007.  In the meantime, the government filed a complaint against Rembao-Renteria charging her

with re-entry after deportation in violation of 8 U.S.C. §§ 1326(a)(1) and (b)(2).  On September

18, ICE Agent Patrick Kenney, the affiant on the federal complaint, transferred custody of

Rembao-Renteria from ICE to the United States Marshals for prosecution on the complaint.

Rembao-Renteria appeared before the Honorable Arthur J. Boylan, United States

Magistrate Judge, on September 18, 2007, for a first appearance.  The government moved for her

temporary detention.  Following a preliminary detention hearing on September 20, 2007, the

magistrate judge concluded that Rembao-Renteria did not present a risk of flight or a danger to

the community, denied the government's motion for detention, ordered the release of Rembao-

Renteria, and directed that she report to Pretrial Services as required and that she not possess any

controlled substances.  The release order specifically indicated that the execution of an unsecured

bond was not a requirement or condition of Rembao-Renteria's release.  The release order was

electronically filed on September 20, 2007.  With the entry of the release order, the United States

Marshals no longer had legal custody of Rembao-Renteria.  ICE did not take custody of

Rembao-Renteria on September 20, 2007.

Shortly before 5:00 p.m. on Friday, September 21, 2007, the government filed a motion

with the magistrate judge requesting reconsideration of the release order, or in the alternative, a

stay of the release order.  Following a telephonic hearing with counsel for the parties, the

magistrate judge denied the government's motion for reconsideration and denied the

government's request for a stay of the release order.  ICE did not take custody of Rembao-

Renteria on Friday, September 21, 2007.

On Monday, September 24, 2007, the government filed an appeal of the release order. Although the government did not file a motion to stay the release order and ICE did not take custody of Rembao-Renteria, she remained in detention at the Sherburne County Jail.

On Wednesday, September 26, 2007, a hearing was held before the undersigned on the government's appeal of the release order. The parties presented argument and the Court took the government's appeal under advisement. The Court ordered all supplemental legal memoranda filed by the close of business on Friday, September 28, 2007, and ordered Rembao-Renteria detained in the custody of the United States Marshals pending resolution of the government's appeal.

## II.    DISCUSSION

The government argues that this Court *must* detain Rembao-Renteria or the government will be compelled to deport her, thereby depriving the government of the opportunity to prosecute her. The Court does not construe the relevant law to mandate that this Court, in effect, save the government from itself in this way. The Court observes that the interplay between Immigration and Customs Enforcement and the Executive branch's prosecution authority has not been the subject of very much litigation. Similarly, the interplay is not explicitly addressed in the governing statutes. For example, Title 8 of the United States Code, covering immigration, specifically addresses *post*-sentence release situations but is silent as to *pre*-trial custody. Title 18, governing the court's obligation to detain or release pending trial, is silent as to immigration holds. The following is this Court's analysis.

Title 18, United States Code, Section 3143 requires that a court conduct an examination of a charged defendant's personal situation and decide whether there are conditions that will enable the defendant to be as free as possible pending trial while still ensuring that the defendant

will reappear and not pose a threat to the community.  Certain offenses, like those carrying long

or mandatory minimum prison terms, are subject to a presumption of detention, but there is no

mention of immigration status.  In the Court's view, immigration status is not excluded as one of

the factors that may be appropriately taken into account in deciding whether a defendant is likely

to flee.  The determination is an individual one as to each defendant.  In no case does Title 18

*mandate* detention.  Even the most serious offenses are subject to a rebuttable presumption.  *See*

18 U.S.C. § 3142(e) (2000 & Supp IV 2004).

Title 8 does, as the government observes, require that ICE deport persons who are

categorized as "inadmissible aliens" within ninety days after they are taken into ICE custody.

Section 1226(c)(1) does, again as the government accurately observes, provide that ICE must

take a deportable person into custody and deport even if the person is on parole or the like:

> The Attorney General shall take into custody any alien who…[is inadmissible]
> when the alien is released, without regard to whether the alien is released on
> parole, supervised release, or probation, and without regard to whether the alien
> may be arrested or imprisoned again for the same offense.

Parole, supervised release, probation, and the possibility of being imprisoned *again* all assume a

conviction.  The Court does not read this list to include conditions placed on a defendant who has

been charged but not convicted.

Should the Court adopt the government's proffered reading of Title 8, a Catch-22 would

arise.  It would be impossible for the Attorney General to prosecute defendants who were not

detained because the Attorney General would be required to take such defendants into custody

and deport them.  First, the Court disagrees that the Congress has created such a situation.

Second, even if the statutory requirements were as the government proffers, the Court disagrees

that the solution would be to detain without further inquiry every criminal defendant who is

subject to an ICE deportation hold.

It seems reasonably clear that the Attorney General, acting through civil immigration authority, may not detain aliens for prosecution. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Under the government's theory, this problem can be overcome by a court ordering the detention that ICE cannot. In other words, if there is an immigration detainer and the defendant faces certain deportation, a detention inquiry is moot—all such defendants must be detained. The government cites no authority for this proposition, and it appears inconsistent with the Supreme Court's reference in *Zadvydas* to the procedural protections of criminal detention. *See* 533 U.S. at 693-95.

The Court must follow the procedures carefully set out in 18 U.S.C. § 3142 to make its own determination of appropriate detention or release conditions. This is to be based on the circumstances of the particular defendant before the Court and not a blanket category—the statute does not provide that all persons in any particular category must be detained. It is probably true that in many, if not the majority of cases, certain deportation will weigh in favor of detention to prevent flight. The government cannot imagine why a "logical person" would not flee. That failure of imagination would extend, it seems, with even greater force to a person facing trial in a case where the maximum sentence is life imprisonment or death, yet even that person is entitled to try to rebut the presumption of detention. 18 U.S.C. § 3142(e); 18 U.S.C. § 3142 (f)(1)(B) (2000 & Supp IV 2004). In the Court's view, Rembao-Renteria presents an example of a person for whom the certainty of deportation does not translate into certainty of flight. She has eight living children, six of whom are minors, and a husband, all of whom live in the same mid-sized Minnesota city where they moved nine years ago. There is no doubt whatsoever that in the absence of the immigration issue, this defendant would not be detained.

5

For the reasons set forth above, the Court concludes that neither the law nor the facts of this case

require the detention of Rembao-Renteria.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.   The Government's Emergency Appeal of the Magistrate's Release Order
     [Docket No. 11] is DENIED.

2.   Defendant Rembao-Renteria is ordered released on the conditions ordered
     by Magistrate Judge Boylan on September 20, 2007.

Dated:  October 2, 2007

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge